UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

**ANTHONY LEGION**

        Petitioner                        Civil Action No. 05-40181

  -vs-                                     Honorable Steven Whalen
                                           United States Magistrate Judge

**KENNETH T. MCKEE**                  Honorable Stephen J. Murphy III
                                           United States District Judge

        Respondent.

_____/

**SUPPLEMENTAL BRIEF AFTER REMAND
IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

**STATE APPELLATE DEFENDER OFFICE**

**BY:**    **JONATHAN SACKS (P67389)**
        Deputy Director
        3300 Penobscot Building
        645 Griswold
        Detroit, Michigan  48226
        (313) 256-9833
        jsacks@sado.org

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

A jury convicted Mr. Legion and co-defendant Marvin Cotton of first-degree murder, M.C.L. § 750.316, and possession of a firearm in the course of a felony, M.C.L. § 750.227b, before the Honorable Daniel P. Ryan, Wayne County Circuit Court. On November 14, 2001, Judge Ryan sentenced Mr. Legion to life in prison, with a consecutive two-year sentence for felony firearm. The prosecution severed and dismissed the case against a third defendant, Devonte Parks.

The charges stemmed from the murder of Jamond McIntyre in the early morning of January 24, 2001. The prosecution introduced no physical evidence of Mr. Legion's guilt, and there were no witnesses to the actual shooting. The evidence connecting Mr. Legion to the murder consisted of the uncertain eyewitness identification testimony of Kenneth Lockhart, the decedent's housemate, and Mr. Cotton's confession to a jailhouse informant, Ellis Frazier.

On June 7, 2005, Anthony Legion filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. On July 10, 2007, this court issued an order granting Petitioner a conditional writ of habeas corpus based on the Sixth Amendment right to confrontation. The order focused on the non-testifying co-defendant's unreliable confession to a jailhouse informant. This court found that:

> Looking at the totality of the circumstances, the state appellate court should have had serious concerns with the reliability of Cotton's "jailhouse confession." The alleged conversation between Frazier and Cotton took place in adjacent holding cells, which were separated by a brick wall, each cell holding about thirty to forty inmates. Frazier and Cotton allegedly spoke through a little gap in the wall. Neither was able to see each other at any time during their alleged conversation. Frazier claimed to make an identification based on seeing Cotton walk past the cell at a later point. In such a public forum of criminal defendants, Cotton would have had any number of motivations for a confession which implicated Petitioner.

- 1 -

(Opinion and Order, 25-26).

On December 15, 2008, the United States Court of Appeals for the Sixth Circuit reversed and remanded *Legion v. McKee* to the district court for further proceedings. The Sixth Circuit ruled that "[t]he issue raised in this habeas appeal has been conclusively decided by another panel of this court. See *Desai v. Booker*, 538 F.3d 424 (6th Cir. 2008). The Opinion and Order of the district court must be, and is, REVERSED on the basis of the Desai decision."

In *Desai*, the Sixth Circuit reversed the grant of a writ of habeas corpus because a change in Supreme Court law meant that the non-testimonial statement at issue no longer implicated the Confrontation Clause. In ruling, the *Desai* court acknowledged that petitioner "raised the argument that the introduction of Adams' non-testimonial hearsay statement violates due process, a theory he has yet to exhaust in state court …. The district court may wish to give him an opportunity to exhaust that claim in the state courts now." *Desai*, 538 F.3d at 431.

Petitioner contends that, unlike the petitioner in *Desai*, Mr. Legion already exhausted the due process claim in state court. He now requests that this court grant habeas relief based on this claim.

Mr. Legion's due process claim was raised both in the Sixth Circuit, and in petitioner's response to the state's motion for reconsideration following the habeas grant by this court. In the order granting Mr. Legion's habeas petition, this court quoted the issue as presented in the original state court claim:

> III.   The trial judge abused his discretion where he denied the motion for severance where it was based on the admission of a non-testifying co-defendant's alleged statement to a jailhouse informant implicating Mr. Legion and **the error denied Mr. Legion his due process rights to a fair trial**.

- 2 -

Opinion and Order, 3-4 (emphasis added).[1]

This argument meant that Mr. Legion exhausted the claim in state court even though the Michigan Court of Appeals resolved the issue as purely a Confrontation Clause challenge. *Smith v. Digman*, 434 U.S. 332 (1978). "Phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right" is sufficient to fairly present a claim. *Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005).

On remand in this court, Mr. Legion requests habeas relief on either due process grounds or the outstanding claim of ineffective assistance of counsel from the initial petition. Should this court find that the due process claim has not been exhausted, petitioner requests that this court provide the same opportunity for exhaustion in state court as the petitioner in *Desai*.

---

[1] The text of the state court claim cites *Powell* v. *Alabama*, 287 U.S. 45 (1932), a Supreme Court case based on due process rights, in support of this argument.

> **I.     THE ADMISSION OF CO-DEFENDANT'S UNRELIABLE STATEMENT TO A JAILHOUSE INFORMANT RENDERED MR. LEGION'S TRIAL SO FUNDAMENTALLY UNFAIR THAT IT DEPRIVED HIM OF HIS CONSTITUTIONAL DUE PROCESS RIGHTS TO A FAIR TRIAL. THIS COURT SHOULD GRANT THE PETITION FOR WRIT OF HABEAS CORPUS.**

**A.     As previously found by this court, the unreliable testimony of the jailhouse informant resulted in Mr. Legion's conviction.**

The United States Supreme Court has recognized that statements made by alleged accomplices are inherently unreliable, "the evidence of such a witness ought to be received with suspicion, and with the very greatest care and caution, and ought not to be passed upon by the jury under the same rules governing other and apparently credible witnesses." *Crawford v. United States*, 212 U.S. 183 (1909).

In the instant case, the prosecution never introduced physical evidence of Mr. Legion's guilt. The only evidence connecting Mr. Legion to the murder consisted of uncertain eyewitness identification testimony of Kenneth Lockhart, the decedent's housemate, and Mr. Legion's co-defendant's statement to the jailhouse informant allegedly implicating Mr. Legion.

Police who arrived at the scene found that Mr. Lockhart's account of events lacked credibility, and his assertions could not be substantiated by physical evidence. Opinion and Order, July 10, 2007, at 7. Further, Mr. Lockhart identified Mr. Legion from a single photo array with only ninety percent certainty, while he was one hundred percent certain of his identification of Mr. Legion's co-defendant, Mr. Cotton. *Id* at 8.

The only other evidence presented against Mr. Legion was the account of Ellis Frazier, who was an inmate with Cotton after his arrest. Frazier testified that Cotton confessed to him in the Wayne County jail. *Id*. at 10. According to Frazier, the two were in adjacent holding cells, separated by a brick wall with each cell containing about thirty to forty inmates. *Id*. Frazier

also testified that there was no eye-to-eye contact. *Id*. Frazier testified that Cotton allegedly confessed to him and said that a man named "Anthony" accompanied him during the shooting. *Id* at 11. Frazier repeatedly referred to "Anthony" as a third participant in the holding cell conversation, and Frazier also testified that he believed the person sitting next to him in his cell was "Anthony," that 'Anthony discussed the crime with Cotton, and the Cotton referred to "Anthony" as being innocent. *Id*. However, when asked to identify "Anthony," Frazier identified Devonte Parks, whose case was dismissed. *Id*. at 5, 12.

Frazier's confusing testimony makes the identity of "Anthony" unclear, especially given the nature of the conditions of the "jailhouse confession." *Id*. at 12. Thus, this court properly found that the co-defendant's statement to a jailhouse informant was entirely unreliable. *Id*. at 23, 25.

Absent this connection between Mr. Legion and Mr. Cotton established by the jailhouse informant, the case against Mr. Legion unravels. All credible physical and identification evidence points to the guilt of Mr. Cotton and two unidentified accomplices. Mr. Lockhart and Lovely Kimble, another witness, identify Cotton at the scene. Mr. Lockhart and a man named Andre Paul identify Cotton as a frequent visitor to the deceased's house. Ms. Kimble and Officer Santonion Adams identify Mr. Cotton's mother's car at the scene. Mr. Lockhart never wavers in his identification of Mr. Cotton as one of the three perpetrators and visitors from the day before the shooting.

In contrast, no witnesses tie Mr. Legion to Mr. Cotton, the deceased, or any vehicles near the house. Ms. Kimble never identified him and Mr. Paul never saw him with the deceased. Only Lockhart identifies Mr. Legion at the scene, and initially with a 90% certainty. Police officers and investigators find Lockhart's account incredible and contradicted by their

observations. The Sergeant at the scene testified that Lockhart had been drinking. Other eyewitnesses offer inconsistent descriptions of the perpetrators' facial hair and head wear to that of Mr. Lockhart. Mr. Lockhart admitted to poor lighting conditions.

As this court concluded:

> [T]he only evidence inculpating Petitioner was Cotton's jailhouse statement to Frazier. Petitioner and Cotton were co-defendants, and with the admission of Cotton's alleged confession to Frazier, Petitioner was Cotton's accomplice to the shooting. Frazier's testimony of Cotton's alleged confession corroborates the already substantial evidence offered against Cotton, and provided the only certain link to Petitioner and the crime. Without the alleged confession, Petitioner was implicated only by unreliable and inconsistent identification testimony from a witness that even the police found incredible.

*Id*. at 30-31.

**B.     The jailhouse informant's testimony of Cotton's unreliable confession violated Mr. Legion's constitutional due process rights.**

The state's use of the co-defendant's inherently unreliable statement to a jailhouse informant rendered Mr. Legion's trial so fundamentally unfair that it deprived him of his due process rights to a fair trial under the Fifth and Fourteenth Amendments. The Due Process Clauses of the Fifth and Fourteenth Amendments guarantee that no person shall be deprived of "life, liberty, or property, without the due process of law." U.S. Const Amends V, XIV. Due process rights to a fair trial require the observation of fundamental fairness:

> As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.

*Lisenba v People of State of California*, 314 U.S. 219, 236 (1941).

Reliability of evidence falls within fundamental fairness concerns necessitated by due process. *See White v Illinois*, 502 U.S. 346, 363-364 (1992) (Thomas, J., concurring) ("Reliability is more properly a due process concern. There is no reason to strain the text of the Confrontation Clause to provide criminal defendants with a protection due process already provides them"); *United States v Shoupe*, 548 F.2d 636, 643-644 (6th Cir. 1977) (admission of unreliable hearsay required reversal under due process clause because it extended beyond "permissible limits of fairness"); *United States v. Agular*, 975 F.2d 45, 47 (2nd Cir. 1992) ("We may assume that facially unreliable hearsay would raise a due process issue...").

The Supreme Court has long recognized that constitutional due process rights are implicated where a defendant's fair trial is prejudiced by an unreliable statement, not subject to cross-examination: "The right of the accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses … have long been recognized as essential to due process." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). *See also Bruton v. United States*, 391 U.S. 123, 131 (1968), noting, "An important element of a fair trial is that the jury consider only *relevant and competent evidence* hearing on the issue of guilt or innocence" (emphasis added).

In *Chambers*, the Court addressed whether the trial was conducted in accord to principles of due process under the Fourteenth Amendment. Chambers was tried and convicted of murdering a policeman. *Chambers,* 410 U.S. at 284. After Chambers was arrested for the murder, another man, Gable McDonald, made a written confession, but later repudiated the confession. McDonald also confessed to three people during conversations. *Id*. at 287-289. At trial, Chambers called McDonald as a witness after the State failed to do so. *Id*. at 291. Chambers requested to cross-examine McDonald as an adverse witness; however he was not

allowed to do so under Mississippi's 'party witness' or 'voucher' rule. *Id*. at 291, 294. Chambers also attempted to introduce the testimony of three witnesses to whom McDonald had confessed. *Id*. at 292. However, the witnesses' testimony was excluded on hearsay grounds. *Id*. 292-293. Thus, Chambers asserted that he was denied a fair trial in violation of due process. *Id.* at 285.

In holding that Chambers' was denied "a trial in accord with traditional and fundamental standards of due process," the Supreme Court reasoned that the "denial or significant diminution" of the right to confront and cross-examine witnesses, "calls into question the ultimate 'integrity of the fact finding process' and requires that the competing interest be closely examined." *Id*. at 295, 302 (quoting *Berger v. California*, 393 U.S. 314, 315 (1969)).

Like Chambers, Mr. Legion could not properly challenge the evidence presented by the prosecution at trial. A jailhouse informant nicknamed "Old School" presented the statement of Mr. Cotton that linked Mr. Legion to the murder. Like Chambers, Mr. Legion was "not allowed to test the witness' recollection… or to 'sift' his conscience as that the jury might judge for itself whether [McDonald's] testimony was worthy of belief." *Id.* at 295 (quoting *Mattox v. United States*, 156 U.S. 237, 242-243(1895)).

This connection between cross-examination of witnesses and due process has been recognized by the Supreme Court in a variety of procedural contexts. *See Specht v. Patterson*, 386 U.S. 605, 610 (1967) ("Due process, in other words, requires that he be present with counsel, have an opportunity to be heard, *be confronted with witnesses against him, have the right to cross-examine*, and to offer evidence of his own.") (emphasis added); *Willner v. Committee on Character and Fitness*, 373 U.S. 96, 103 (1963) ("We have emphasized in recent years that procedural due process often requires confrontation and cross-examination of those whose word

- 8 -

deprives a person of his livelihood."); *Morrisey v. Brewer*, 408 U.S. 471, 489 (1972) (finding right to confrontation and cross-examination among minimum requirements for due process at parole revocation hearing, but allowing hearing officer to limit for good cause). Changing Confrontation Clause law means that Frazier's unreliable, but non-testimonial, statement no longer implicates the Clause. Nevertheless, United States Supreme Court precedent mandates that unreliable, unchallenged statements should still be analyzed to see whether they are so fundamentally unfair that they violate constitutional due process rights. In Mr. Legion's case, they do.

C. **Where the state court failed to rule on the merits of the due process claim, this court should apply *de novo* review and grant the petition for writ of habeas corpus.**

Petitioner's state court claim presented the issue of Cotton's confession to the jailhouse informant as both a Confrontation Clause and due process violation. Opinion and Order, 3-4. Nevertheless, the state court only considered the issue under the Confrontation Clause. *People v. Cotton*, No. 239719, 2003 WL 22339219, at *4 (Mich. Ct. App. Oct. 14, 2003). As the state court did not adjudicate the due process claim on the merits, this court should apply *de novo* review. *Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004).

The unique nature of the timing of this case in the midst of changing Confrontation Clause law meant that the Sixth Circuit overruled the habeas grant. Yet, an unreliable jailhouse informant presented the critical evidence of Cotton's confession, and Mr. Legion lacked the ability to cross-examine Cotton. As found by this court, this unreliable evidence directly resulted in Mr. Legion's murder conviction. Since the Supreme Court has found that fundamentally unfair testimony, unchallenged by cross-examination, violates constitutional due process, this court should grant habeas under *de novo* review.

- 9 -

**D.       Habeas relief is also required based on the plain language of 28 U.S.C. § 2254.**

In finding a habeas grant improper where the case no longer implicated the Confrontation Clause, the Sixth Circuit in *Desai*, *supra*, based its decision in part on the language of 28 U.S.C. § 2254(a). The court found that relief "is available only to state prisoners who *currently* are being held in violation of an existing constitutional right, not to inmates who at one point might have been able to show that a since-overruled Supreme Court or lower court precedent would have granted them relief." *Desai*, 538 F.3d at 428 (emphasis added). This focus on § 2254(a) is critical. Section 2254(d) conditions habeas relief on a state court decision "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." In addition, § 2254(a), requires a *violation of current* constitutional law. Section 2254(a), however, does not dictate an analysis of whether the state court made an *unreasonable application*, as required by § 2254(d).

Therefore, per *Desai* this court should still grant the habeas petition. First, as already found by this court, co-defendant's unreliable statement to a jailhouse informant presented an unreasonable application of Confrontation Clause jurisprudence under *Ohio v. Roberts*, 448 U.S. 56 (1980), contrary to § 2254(d). This analysis is still correct because § 2254(d) refers to "clearly *established* Federal law" at the time of the state court proceedings. Second, the constitutional due process violation demonstrates Mr. Legion "*is in custody* in violation of the Constitution or laws or treaties of the United States," in violation of § 2254(a). The *Desai* court found:

> Even if it were true, as Desai argues, that the state courts unreasonably applied the old *Roberts* test, that would mean only that his habeas application cleared that hurdle for obtaining relief, not that he otherwise qualified for relief. Section 2254(a) still requires the applicant to show that he is currently being held in custody in violation of an extant constitutional right.

538 F.3d at 429. Mr. Legion's case satisfies each of these hurdles: the admission of Cotton's unreliable and unchallenged confession through testimony of the jailhouse informant (1) represents an unreasonable application of *Roberts* by the state courts, and (2) means that Mr. Legion is currently in custody in violation of his right to due process.

### II. MR. LEGION IS STILL ENTITLED TO EITHER HABEAS RELIEF OR AN EVIDENTIARY HEARING ON THE OUTSTANDING ISSUE OF INEFFECTIVE ASSISTANCE OF COUNSEL.

This court's previous findings regarding both the unreliability of co-defendant's confession to the jailhouse informant and the critical nature of this statement greatly strengthen Mr. Legion's second issue in the original habeas petition. As fully described in the petition for writ of habeas corpus, the prosecution dismissed charges against a third co-defendant, Devonte Parks, whom trial counsel never called as a witness.

Devonte Parks would have testified that, contrary to the trial testimony, the co-defendant's alleged confession to the informant never took place. (Memorandum of Law in Support of Petition for Writ of Habeas Corpus, Issue II). As noted by this court, "[w]ithout the alleged confession, Petitioner was implicated only by unreliable and inconsistent identification testimony from a witness that even the police found incredible." (Opinion and Order, page 31). Under these circumstances, trial counsel was ineffective for failing to counter the critical piece of evidence against his client by calling Devonte Parks as a witness.

Mr. Legion requests that given the unique circumstances of this case, whereby changing Confrontation Clause law required reversal of the original habeas grant, this court now review this second issue, and either grant habeas relief or order an evidentiary hearing involving the testimony of Mr. Parks. (Petition for writ of habeas corpus, Issue II).

## **SUMMARY AND RELIEF**

**WHEREFORE**, for the foregoing reasons, Petitioner asks that this Honorable Court:

(1) Grant habeas relief based on a violation of due process, or in the alternative, remand to state court for exhaustion of the due process issue; or

(2) grant habeas relief based on ineffective assistance of counsel, or order an evidentiary hearing for further development of the record.

Respectfully submitted,

**STATE APPELLATE DEFENDER OFFICE**

s/Jonathan Sacks
**JONATHAN SACKS**
Deputy Director
3300 Penobscot Building
645 Griswold
Detroit, Michigan  48226
(313) 256-9833
jsacks@sado.org
P67389

Dated:  March 3, 2010

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:  Brad Beaver, Assistant Attorney General.

                                              s/Jonathan Sacks  
                                              **JONATHAN SACKS**  
                                              Deputy Director  
                                              3300 Penobscot Building  
                                              645 Griswold  
                                              Detroit, Michigan  48226  
                                              (313) 256-9833  
                                              jsacks@sado.org  
                                              P67389