UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY LEGION,

      Petitioner,                    Case No. 2:05-cv-40181

                                        HONORABLE STEPHEN J. MURPHY, III

v.

KENNETH T. MCKEE,

      Respondent.

                                     /

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1] AND GRANTING IN PART AND DENYING IN PART CERTIFICATE OF APPEALABILITY**

Anthony Legion filed a petition for a writ of habeas corpus, ECF 1, challenging his convictions for first-degree murder and possession of a firearm during a felony. Legion raises four claims: (i) the admission of a non-testifying co-defendant's statement violated due process; (ii) counsel was ineffective in failing to call witness Devonte Parks or an expert witness on the reliability of eyewitness testimony; and (iii) the prosecutor knowingly presented false testimony, and (iv) Legion's default of the claim should be excused. The Court finds that Petitioner's claim that the prosecutor knowingly presented false testimony is untimely, and the remaining two claims are meritless. Thus the Court will deny the petition and grant a certificate of appealability for Legion's due process claim.

**BACKGROUND**

Legion's convictions arise from the shooting death of Jamond McIntyre during the early morning hours of January 24, 2001 in Detroit.

Kenneth Lockhart testified that, on the night of the shooting, he was at home in a

house he shared with McIntyre. Lockhart and his girlfriend, Renay Tate, spent the evening there. Shortly before midnight, McIntrye called to tell Lockhart he was on his way home and to ask Lockhart to look out for him. A short time later, McIntyre safely entered the home. Lockhart and Tate went to bed. During the early morning hours, Lockhart was awakened by the sound of gunfire. It sounded as if it were coming from the home's front porch. Lockhart called 911 and pushed Tate into the closet. He heard over 20 gunshots. As the shots sounded like they were becoming more distant, Lockhart peeked out from behind his bedroom door. He did not see anyone in the house so he retrieved a gun and returned to his own bedroom. At that point, he realized someone was in the house. He again peaked out from behind the bedroom door. He saw two men; one was going through the kitchen drawers while holding a gun in one hand and the other man ran past the bedroom door and stood to one side of the door. A third man, who Lockhart identified as Marvin Cotton, then walked into the home. Lockhart asked Cotton where McIntyre was. Cotton pointed to one of the other two men and directed the man to kill Lockhart. Lockhart began shooting and dove back into the bedroom.

     Lockhart testified that he was certain that one of the men in the home was Cotton. Lockhart had met Cotton a day or two before when Cotton, accompanied by Legion and one other man, came to the home looking for McIntyre. Lockhart initially testified on direct examination that he was 90 percent sure that one of the other two men in the home just after the shooting was Legion. Upon further questioning, he testified that he was "sure" and had "[n]o doubt" that one of the three men present when McIntyre was shot was Legion. ECF 58-10, PgID 1085–86.

     Ellis Frazier testified that he was housed in a holding cell adjacent to Cotton in the

Wayne County Jail on June 28, 2011. Frazier and Cotton spoke to each other through a gap in the wall between cells. Frazier testified that he had a reputation as someone who understood the legal system and would often be asked for advice. Cotton asked Frazier about whether to waive a jury trial. Cotton proceeded to tell Frazier details of the crime for which he was awaiting trial. Cotton admitted that police knew he had been at the scene of the crime because his mother's car was identified as being parked outside McIntyre's home. Cotton admitted that he and two other men went to "Jay's" house with the intent to rob him and that he and the other two men had been at the house the previous day shooting pool. Cotton stated that when Jay tried to flee, one of the three men shot him. Cotton also stated that a man named Ken Lockhart was in the home.

Frazier testified that a man named "Anthony" was present in the holding cell with him while he was talking to Cotton. He also testified that the man in the holding cell was not Anthony Legion. He identified a photograph of Devonte Parks as the person who was in the holding cell with him. Frazier's testimony was confusing and fluctuated between incriminating a man named Anthony and claiming that Cotton proclaimed Anthony was innocent. On the one hand, Frazier testified that, according to Cotton, Anthony and Cotton went to the basement of Jay's home to get money out of a safe. On the other hand, Frazier testified that he came forward because he heard that a third man, named "Anthony," had been falsely accused in connection with the murder.

Neither Legion nor his co-defendant Cotton testified at trial.

## PROCEDURAL HISTORY

Legion and co-defendant Cotton were tried jointly before a jury in Wayne County Circuit Court. A third man, Parks, was also charged in connection with the murder. Parks's

3

trial was severed from Legion and Cotton's joint trial and the charges against him were ultimately dismissed. *See People v. Cotton*, No. 238216, 2003 WL 22339219, at *4, n.3 (Mich. Ct. App. Oct. 14, 2013). Petitioner was convicted of first-degree murder and possession of a firearm during the commission of a felony. On November 14, 2001, he was sentenced to life in prison for the murder conviction, to be served consecutively to two-year imprisonment for the felony-firearm conviction.

Following his sentence, Legion filed a motion for a new trial based on insufficiency of evidence, or in the alternative, a new trial based on ineffective assistance of counsel. Legion also requested a hearing for the purpose of creating a record of the testimony of two witnesses: Parks and an expert in eyewitness testimony. The trial court denied the motion. Petitioner then filed a motion for reconsideration and a request for a *Ginther* hearing regarding the denial of his motion for a new trial. The trial court denied the motion. ECF 58-16.

Legion filed an appeal of right in the Michigan Court of Appeals raising these claims. The Michigan Court of Appeals affirmed Legion's convictions. *Cotton*, 2003 WL 22339219, at *5. Legion presented the same claims in an application for leave to appeal with the Michigan Supreme Court, which that court denied. *People v. Legion*, 470 Mich. 873 (2004).

On June 6, 2005, Legion filed a petition for a writ of habeas corpus. ECF 1. The petition was assigned to the Honorable Paul V. Gadola. On July 10, 2007, Judge Gadola granted Legion a conditional writ of habeas corpus, finding that Legion's right of confrontation was violated by the admission of a non-testifying co-defendant's statement to a jailhouse informant. *Legion v. McKee*, No. 05-CV-40181, 2007 WL 2004918 (E.D. Mich. July 10, 2007) (Gadola, J.). Subsequently, on December 16, 2008, the Sixth Circuit

reversed Judge Gadola's conditional grant of the writ and remanded the matter for further proceedings. On March 9, 2009, the case was reassigned to the undersigned district judge. ECF 41. Legion filed a supplemental brief on March 3, 2010, raising additional claims. ECF 42.

The Court held Legion's habeas petition in abeyance while he returned to the state courts to exhaust his due process claim. ECF 46. Legion filed a motion for relief from judgment in the trial court raising four claims. The state trial court denied the motion. ECF 58-23. Both the Michigan Court of Appeals and Michigan Supreme Court denied Legion's leave to appeal. ECF 58-25, 58-26.

Legion then returned to the Court and filed an amended petition as well as a pro se supplemental brief. ECF 55. Legion presents the following issues: (1) the admission of his co-defendant's statement to a jailhouse informant rendered the trial fundamentally unfair depriving Legion of his constitutional due process rights to a fair trial; (2) defense counsel was ineffective by failing to call Devonte Parks to impeach other witnesses' testimony; (3) the Court should consider Legion's false testimony claim because his failure to present on direct appeal is excusable and the prosecution failed to correct the false testimony; and (4) Legion's due process rights were violated by the prosecutor's failure to correct the jailhouse informant's false testimony that the prosecutor knew to be false. Respondent filed an answer to the petition, arguing that Legion's first, third, and fourth claims were not filed within the one-year statute of limitations and that all of the claims are meritless.

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs review of habeas petitions. Under AEDPA, a state prisoner is entitled to a writ of habeas

5

corpus only if he can show that the state court's adjudication of his claims—

>  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (*Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). Decisions of "lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citation omitted).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). A state court's application of Supreme Court precedent "must have been more than incorrect or erroneous . . . [it] must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520–21 (citations omitted). A state court's decision on the merits prevents federal habeas relief so long as "fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S.

6

652, 664 (2004)). Federal habeas corpus prevents against extreme malfunctions in state criminal justice systems and is "not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (quotation omitted). The state prisoner must demonstrate that the state court's determination "was an error so well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Id.* at 103.

Lastly, the Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1). A petitioner may rebut the presumption only with clear and convincing evidence. *Id.*

## DISCUSSION

I. <u>Statute of Limitations</u>

Legion's habeas claim was timely filed. A prisoner must file a federal habeas corpus petition within one year of final judgment. 28 U.S.C. § 2244(d)(1)(A). The one-year limitations period does not begin to run until the expiration of the time to file a petition for a writ of certiorari to the United States Supreme Court. *Isham v. Randle*, 226 F.3d 691, 695 (6th Cir. 2000). In addition, the time during which a prisoner seeks state-court collateral review of a conviction does not count toward the limitations period. 28 U.S.C. § 2244(d)(2). A properly filed application for state post-conviction relief, while tolling the statute of limitations, does not restart the limitations period. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003).

Petitioner appealed his conviction first to the Michigan Court of Appeals, and then to the Michigan Supreme Court. The Michigan Supreme Court denied his application for leave to appeal on June 10, 2004. *People v. Legion*, 470 Mich. 873 (2004) (Table). Legion had ninety days from that date to file a petition for writ of certiorari with the United States

Supreme Court, which he did not do. Thus, his conviction became final on September 8, 2004, when the time period for seeking certiorari expired. The last day on which a petitioner can file a petition for a writ of certiorari in the United States Supreme Court is not counted toward the one-year limitations period applicable to habeas corpus petitions. *Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000) The limitations period expired on September 9, 2005. Legion timely filed his habeas petition on June 7, 2005.

II.  Whether Legion's Amended and Supplemental Claims Relate Back

An amended pleading "relates back" to the original pleading only if the amended claims are tied to the "common core of operative facts" as alleged in the original petition. *Mayle v. Felix*, 545 U.S. 644, 664 (2005) (referencing Fed. R. Civ. P. 15(c)(2)). "An amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650.

Legion's due process claim from his amended and supplemental petitions relate back to the date of the original petition. In his original petition, Legion argued that the trial court violated the *Ohio v. Roberts*, 448 U.S. 56 (1980) test for reliability by admitting a non-testifying co-defendant's statement to a jailhouse informant. In the amended petition, Legion argues that the jailhouse informant's testimony was so inherently unreliable that admission violates due process. The due process claim arises from the same core of operative facts as the *Ohio v. Roberts* claim because both claims require an assessment of the circumstances of the jailhouse confession and are related in time and type. The due process claim therefore relates back and is timely.

Legion's prosecutorial misconduct claim—including his claim that he showed good

8

cause for failing to raise the claim on direct review—was not raised in his original petition and does not share a "common core of operative facts" with any claim from his original petition. AEDPA's limitations period shall run, where applicable, from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Legion argues that he discovered the factual predicate of the prosecutor's knowing presentation of Ellis Frazier's false testimony in 2011.

Even assuming that Legion could not and did not discover the necessary evidence until the last day of 2011, the claim is untimely. Legion first raised his false testimony claim in a supplement to his motion for relief from judgment filed in the trial court on December 10, 2012. ECF 58-18. The filing of the supplement to the motion—a properly filed motion for state court collateral review—tolled the limitations period with twenty days remaining. *See* 28 U.S.C. § 2244(d)(2). The limitations period tolled until December 23, 2014, when the Michigan Supreme court denied Legion's application for leave to appeal. The limitations period resumed on December 24, 2014. The limitations period ran, uninterrupted, until it expired twenty days later, on January 13, 2015. Legion did not raise the false testimony claim until he filed a supplement to his habeas petition on May 27, 2015, over four months after the limitations period expired. The Court finds no basis for equitable tolling of the limitations period. Consequently, the claim is untimely.

III.  Due Process Claim

Legion argues that the admission of co-defendant Marvin Cotton's statement to jailhouse informant Ellis Frazier violated his right to due process and that the claim should be reviewed *de novo*. Respondent argues that the claim is procedurally defaulted and, to

9

the extent that the claim is not defaulted, the Court should afford AEDPA deference to the state court's decision.

> A. Whether Legion procedurally defaulted his due process claim need not be addressed.

"[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Because addressing the merits of Legion's claim best serves judicial economy, the Court will proceed without deciding the procedural-default issue.

> B. The Court applies AEDPA deference to the state court's meritorious decision.

The Court must determine whether the state courts' decisions contradicted or unreasonably applied federal law. *See* 28 U.S.C. § 2254(d). Analysis of Legion's claim "thus demands an inquiry in to whether [his] 'claim' has been 'adjudicated on the merits' in state court; if it has, AEDPA's highly deferential standards kick in." *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015) (citation omitted). If not, the court reviews the petitioner's claim *de novo*. *See Kernan v. Hinojosa*, 136 S. Ct. 1603, 1604 (2016).

The last state court to issue a reasoned opinion addressing the due process claim found that any error was harmless. ECF 58-23, PgID 1925. A state court's determination that "any federal error was harmless" beyond a reasonable doubt "undoubtedly constitute[d] an adjudication [of the claim] 'on the merits.'" *Davis*, 135 S. Ct. 2198. The state court certainly applied a harmless-error analysis to Legion's due process claim. Accordingly, AEDPA's deferential standard of review applies to Legion's claim.

> C. The state court decision was not contrary to or an unreasonable application of federal law.

Legion contends that Cotton's statement to Frazier was inherently unreliable and admission of the statement rendered Legion's trial so fundamentally unfair that it denied him his rights under the Due Process Clause. An evidentiary ruling may be so egregious that it results in a denial of fundamental fairness and violates the Due Process Clause. *Bugh v. Mitchell*, 329 F.3d 496, 512 (2003) (citation omitted). The Supreme Court "defined the category of infractions that violate fundamental fairness very narrowly." *Estelle v. McGuire*, 502 U.S. 62, 73 (1991) (quotation omitted). An evidentiary decision must "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour*, 224 F.3d 542, 552 (6th Cir. 2000) (citation omitted).

Supreme Court precedent has not held that "a co-defendant's nontestimonial hearsay confession[] violates due process based on its lack of reliability." *Desai v. Booker*, 732 F.3d 628, 631 (6th Cir. 2013). The Supreme Court acknowledges that "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Id.* (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)). The limited role for due process is inconsistent with "the other lines of defense against unreliable evidence: the constitutional guarantees that produce an adversarial system (counsel, process[,] and confrontation that itself will test the reliability of evidence, the state and federal rules of evidence and the jury." *Id.* (citing *Perry v. New Hampshire*, 565 U.S. 228, 236 (2012)). Moreover, the due process clause states an "exceedingly general rule" regarding the admissibility of evidence. *Id.* "'The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations,' *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004), and, it follows, the less likely a state court's application of the rule will be unreasonable." *Id.*

Here, the state court's conclusion that admission of Cotton's hearsay statement did not violate due process was not unreasonable. Legion's attorney effectively challenged Frazier's testimony on cross-examination. As a result, Frazier provided inconsistent testimony. Thus, the adversarial system cited by the Sixth Circuit in *Desai* as providing a defense to test the reliability of evidence provided the intended safeguard in Legion's case. Legion has not shown that the state court's decision that no due process violation occurred was contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

IV. <u>Ineffective Assistance of Counsel Claim</u>

Legion next argues that his trial attorney was ineffective in failing to call Devonte Parks and an expert in eyewitness testimony as witnesses.

Legion seeks an evidentiary hearing to develop his claim that counsel was ineffective in failing to call Parks as a witness. Federal habeas review under 28 U.S.C. § 2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). As a result, federal district courts cannot conduct "evidentiary hearings to supplement existing state court records when a state court has issued a decision on the merits with respect to the claim at issue." *Ballinger v. Prelesnik*, 709 F.3d 558, 561 (6th Cir. 2013). The state court adjudicated Legion's ineffective assistance of counsel claim on the merits, therefore the Court must decide the claim based upon the existing record.

*Strickland v. Washington*, 466 U.S. 668 (1984), establishes the test for review of ineffective assistance of counsel claims under the AEDPA. *See Williams v. Taylor*, 529 U.S. 362, 390–91 (2000). The two-pronged *Strickland* test requires a showing of deficient

12

performance and resulting prejudice. 466 U.S. at 687. A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. "This requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

Habeas relief may be granted only if the state-court decision unreasonably applied the *Strickland* standard. *Knowles v. Mirzayance*, 556 U.S. 111, 122–23 (2009). When evaluating the state court's resolution of *Strickland*'s performance requirement, federal courts must "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (citation omitted).

Legion argues that counsel was ineffective in failing to call Devonte Parks as a witness. Legion contends that Parks would have called into question the credibility of Lockhart and Frazier and thus create a reasonable probability that the result of the proceeding would have been different. ECF 58-18, PgID 1778–79 (Parks Affidavit).

The Michigan Court of Appeals held that trial counsel's decisions on which witnesses to call are matters of trial strategy and that Legion failed to show that, in this instance, "counsel's decision not to call these witnesses constituted error rather than trial strategy." *Cotton*, 2003 WL 22339219, at *4. The record does not show that the state court unreasonably applied the *Strickland* standard.

Frazier's testimony about an individual named "Anthony" is confused and contradictory to the extent that it is rendered almost incomprehensible. On direct examination, Frazier testified that, according to Cotton, Cotton and a man named Anthony

13

were present at the time of the shooting. Frazier also testified that a man in the bullpen with Frazier named Anthony had been arrested in connection with the crime, but, according to Cotton, the cellmate was innocent. On cross-examination, Frazier testified that his cellmate discussed the details of the crime with Cotton and that Cotton said a third man, who was not present in the cell, was innocent. On re-direct, Frazier said it was the man in Frazier's cell named Anthony who was innocent. Frazier identified a photograph of Parks as his cellmate. On re-cross, Frazier testified that Cotton and the man in the cell with Frazier (Parks) committed the crime. In sum, Frazier's testimony seemed to be that, according to Cotton, three men were suspected of committing the crime and one of those men was innocent. Counsel may have reasonably concluded that calling Parks to testify and proclaim his innocence would have convinced the jury that of the three men (Cotton, Legion, and Parks), Parks was the innocent one and Legion, therefore, was guilty.

Legion further argues that counsel was ineffective in failing to call an expert witness to testify about the unreliability of eyewitness identifications. "No precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." *Perkins v. McKee*, 411 F. App'x 822, 833 (6th Cir. 2011). Although counsel did not call an expert witness on the problems of eyewitness identification, trial counsel vigorously cross-examined Lockhart about the problems with his identification. Legion was not denied effective assistance of counsel due to trial counsel's failure to seek the assistance of expert witness on identification, where counsel effectively cross-examined the witness's identification testimony.

**CERTIFICATE OF APPEALABILITY**

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. To obtain a certificate of appealability, Petitioner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, Petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

Here, reasonable jurists could debate the Court's holding with respect to the due process claim. The Court, therefore, grants Petitioner a certificate of appealability as to his due process claim. The Court finds that reasonable jurists could not debate the Court's conclusions with respect to the remaining claims and denies a certificate of appealability as to those claims.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the petition for a writ of habeas corpus [1]. The Court **GRANTS** a certificate of appealability on Petitioner's due process claim and **DENIES** a certificate of appealability with respect to the remaining claims.

**SO ORDERED**.

Dated: November 13, 2017

s/Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 13, 2017, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager